```
        IN THE UNITED STATES DISTRICT COURT FOR THE
               EASTERN DISTRICT OF OKLAHOMA

SHALONDA A. EVANS                )
                                 )
               Plaintiff,        )
                                 )
                                 )   Case No. CIV-20-337-RAW-KEW
                                 )
COMMISSIONER OF THE SOCIAL       )
SECURITY ADMINISTRATION,         )
                                 )
               Defendant.        )
```

## REPORT AND RECOMMENDATION

Plaintiff Shalonda A. Evans (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. The Claimant appeals the Commissioner's decision, asserting that the Administrative Law Judge ("ALJ") incorrectly determined she was not disabled. For the reasons discussed below, the undersigned Magistrate Judge recommends that the Commissioner's decision be REVERSED and REMANDED.

### Claimant's Background

The Claimant was 49 years old at the time of the ALJ's decision. She has a high school education and has worked in the past as a childcare monitor and landscape laborer. The Claimant alleges an inability to work beginning on May 1, 2013. She initially claimed that this inability stems from limitations resulting from fibromyalgia, hypertension, asthma, lung cancer,

1

congestive heart failure, Crohn's disease, neuropathy, obesity, nerve damage, and lower spinal stenosis.

## Procedural History

On June 12, 2017, the Claimant applied for disability insurance benefits under Title II (42 U.S.C. § 401, et seq.) of the Social Security Act and for supplemental security income benefits under Title XVI (42 U.S.C. § 1381, et seq.) of the Social Security Act. The Claimant's applications were initially denied and were denied on reconsideration. The Claimant filed a request for a hearing, which was held on May 16, 2019, by video in front of ALJ Luke Liter. A supplemental video hearing was held on December 19, 2019. ALJ Liter entered an unfavorable decision on January 29, 2020. The Claimant requested review by the Appeals Council and the Council denied such request on July 27, 2020. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481

## Decision of the Administrative Law Judge

The ALJ followed the five-step sequential process that the social security regulations use to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] At step two, the ALJ found

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant show that he has a medically severe impairment or combination of impairments that significantly limit his ability

that the Claimant had the following severe impairments: osteoarthritis, asthma, obesity, depressive disorder, intellectual disorder, and anxiety disorder. (Tr. 15). Between steps three and four, the ALJ determined that the Claimant had the following residual functional capacity ("RFC"):

> The claimant is able to lift or carry, push or pull ten pounds occasionally and less than ten pounds frequently. The claimant can sit for six hours out of an eight-hour day, and stand or walk a combined total of two hours out of an eight-hour day. The claimant can occasionally climb ramps or stairs, but should avoid climbing ladders, ropes, or scaffolds. The claimant can occasionally balance, kneel, stoop, crouch, and crawl. The claimant should avoid concentrated exposure to fumes, odors, dusts, gasses, or other similar respiratory irritants. The claimant can understand, remember, and carry out simple tasks. Public contact should not be a part of the job duties. The claimant can tolerate superficial contact with coworkers and supervisors.

(Tr. 16). Then, at step four, the ALJ concluded that this RFC would not allow the Claimant to return to her past relevant work. Finally, at step five, the ALJ stated, "[c]onsidering the

---

to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 21). Thus, the ALJ found that the Claimant had not been under a disability, as defined in the Social Security Act, from May 1, 2013, through the date of the decision on January 29, 2020. (Tr. 22).

## Errors Alleged for Review

The Claimant asserts that the ALJ erred in two ways. First, the ALJ erred at step five of the sequential evaluation process because the ALJ's determined RFC would not allow the Claimant to perform the jobs outlined for her. Second, the ALJ failed to evaluate the medical opinions properly, which led to a flawed Step Five decision.

## Social Security Law and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A).

4

Judicial review of the Commissioner's final determination is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means — and means only — 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) *(*quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01. The Commissioner's decision will stand, even if a court might have reached a different conclusion, as long as it is supported by substantial evidence. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

### Consideration of Medical Opinions

The Claimant first contends that the ALJ's determined RFC would not allow her to perform any of the identified jobs. The

Claimant asserts that all three jobs which the vocational expert determined that she could perform should be eliminated as they required a reasoning level of two or three, which the Claimant contends the RFC precludes. She also argues that the ALJ improperly rejected the opinions of Dr. Minor Gordon, Ph.D. and Dr. Subramaniam Krishnamurthi, M.D., which led to a flawed step five determination. As further explained below, the undersigned Magistrate Judge agrees that the ALJ did not properly consider the medical opinions of Dr. Gordon and Dr. Krishnamurthi. Therefore, the case should be reversed and remanded for further consideration.

The Claimant applied for benefits on or after March 27, 2017, meaning that the medical opinion evidence is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under these new standards the ALJ does not "defer or give specific evidentiary weight. . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520(c)(a). An ALJ considers medical opinions utilizing five factors: (1) supportability, (2) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other

evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The ALJ must utilize these factors when determining how persuasive he finds the medical opinions and prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

Generally, when examining medical opinions, the ALJ must only specifically explain how he considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b). However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). He may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability").

7

If he rejects an opinion completely, the ALJ must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

Here, the ALJ rejects the opinions and stated limitations of Dr. Gordon and Dr. Krishnamurthi. However, the ALJ fails to address why these opinions were not supported by the record or how they are inconsistent with the record. The ALJ also ignores substantial evidence that does support these opinions and fails to adequately explain why he does so.

The Claimant argues that the ALJ's RFC is flawed because he should have found she only possessed the capability of performing work that required a reasoning level of one. This argument is primarily based off the consultative reports of Dr. Gordon. Dr. Gordon evaluated the Claimant on June 27, 2019. In his mental status examination, Dr. Gordon noted that "her mood is one of severe depression," and he estimated based on their conversation that her level of intelligence and social adaptive behavior is consistent "with an individual who is mentally retarded." (Tr. 1498). Dr. Gordon also performed psychological testing on the Claimant. (Tr. 1498). The results from the Wechsler Adult Intelligence Scale-IV indicated a full-scale IQ of 61, which would place the Claimant's "current level of intelligence . . . close to the middle of the mild range of mental retardation." (Tr. 1498-99). The Claimant also had a Global Assessment of Functioning (GAF)

of 50. (Tr. 1500). Dr. Gordon noted that the Claimant had moderate issues remembering, understanding, and carrying out simple instructions, as well as moderate issues interacting appropriately with supervisors, co-workers, and the public. (Tr. 1501-02). Dr. Gordon also noted that the Claimant is "marked" in her ability to make judgments on simple work-related decisions or to respond appropriately to usual work situations and changes in routine work settings. (Tr. 1501-02).

The ALJ found Dr. Gordon's opinion to be unpersuasive, providing the following explanation:

> Dr. Gordon did not give specific functional limits, only that she is "marked" in responding to usual work situations and changes in routine work setting. However, he noted no issues with her focus, attention, or concentration. While she had some memory deficits in some areas, he did not explain why he thinks she would be marked in this area. Given her relatively minimal psychological treatment, the claimant could function within [the RFC] restrictions.

(Tr. 21). This explanation inadequately explains the ALJ's reasoning for his outright rejection of Dr. Gordon's opinion and ignores evidence that supports Dr. Gordon's findings. The ALJ also fails to explain how the medical evidence does not support Dr. Gordon's opinion or how Dr. Gordon's opinion is inconsistent with the record. Instead, he makes conclusory statements and only addresses portions of Dr. Gordon's opinion. The ALJ fails to address the portions of Dr. Gordon's opinion which explain his reasoning behind his limitations and support his findings of severe

9

depression. (Tr. 1498-1500). The ALJ also fails to address two prior inpatient hospitalizations and how this is consistent with his finding that the Claimant had "relatively minimal psychological treatment." (Tr. 20). This is improper and requires reversal.

The ALJ also fails to provide an adequate reason to ignore Dr. Krishnamurthi's limitations regarding the Claimant's right upper extremity and its functioning. (Tr. 20). The ALJ provided the following explanation for rejecting Dr. Krishnamurthi's opinion:

> While the limitations given in the opinion are consistent with the finding of a capacity for sedentary work, the specific limitations for the right upper extremity are not persuasive. The overall record does not show any limitation in range of motion for the upper extremity and the restrictions during the examination in the claimant's range of motion in the shoulder do not support a finding of limitation in capacity to handle, finger, or feel with the right hand.

(Tr. 20). The ALJ's decision to find Dr. Krishnamurthi's report unpersuasive ignores the numerous complaints throughout the medical record of pain in the Claimant's right shoulder. (Tr. 927; 997; 1125; 1138; 1150; 1163). The ALJ failed to explain how this evidence does not support Dr. Krishnamurthi's findings, in fact he fails to address this specific evidence at all. Instead, he makes conclusory statements regarding the overall record not supporting Dr. Krishnamurthi's limitations. (Tr. 20). But these conclusory statements fail to specifically address inconsistencies between

the record and Dr. Krishnamurthi's findings. These statements also fail to properly explain why the medical evidence does not support Dr. Krishnamurthi's opinion. The ALJ's explanation is not enough to support his rejection of the limitations found by Dr. Krishnamurthi as it ignores objective medical evidence that supports these limitations.

Finally, the Claimant argues that since the ALJ also rejected the opinions of the state agency's psychologists, he is "strick[ing] out and form[ing] his own opinion." The Claimant seems to assert that this is another reason for reversal. But as the Commissioner correctly points out, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). While the ALJ does not need specific medical evidence to make a proper RFC determination, since the ALJ improperly analyzed the medical opinions of Dr. Gordon and Dr. Krishnamurthi, this case still must be reversed.

Because the ALJ failed to properly assess all medical opinions and provide explanations for the lack of supportability and consistency, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the medical opinions. As for the Claimant's argument that the ALJ erred at step five of the analysis, this Court cannot decide this as it

11

cannot reweigh the evidence or provide reasons for the ALJ's decision. *Haga*, 482 F.3d at 1207-08. The ALJ should properly assess the supportability and consistency of the medical opinions on remand. He should then determine whether this impacts his RFC determination and what work the Claimant can perform.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be REVERSED and the case REMANDED for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 7th day of September, 2022.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE